The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM GALE,<br><br>Defendant. | No. CR20-04 RAJ<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

The United States of America, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and Erin H. Becker, Assistant United States Attorney for said District, files this sentencing memorandum.

## I.   INTRODUCTION

This matter is set for a sentencing hearing before this Court on February 5, 2021, at 11:00 a.m. The defendant, William Gale, entered a plea of guilty to *Felon in Possession of a Firearm*, in violation of 18 U.S.C. § 922(g)(1), as charged in Count 1 of the Indictment. The government recommends that the Court impose a sentence of 66 months in prison.

## II.   FACTUAL SUMMARY

On November 17, 2019, Seattle Police Department Officer Jason Pecore was patrolling in the Capitol Hill area of Seattle in the early morning hours. Dkt. 58, ¶ 5. A car caught his attention as it slowed down as if to park, then sped away when the driver seemed to notice the officer's presence. A short time later, Officer Pecore noticed the same car

*United States v. Gale* / CR20-04 RAJ
Government's Sentencing Memorandum - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

parked in a parking lot in an area known for high crime, gang, and drug activity. PSR ¶ 7. He looked into the window of the car and saw in open view a handgun in the map pocket of the rear passenger-side seat. Dkt. 58, ¶ 5; PSR ¶ 8. Leaving a firearm unsecured in a car in view of the public is a violation of the Seattle Municipal Code. SMC 12A.14.140(A)(2), (4). Officer Pecore advised other officers of what he had seen, and decided to wait in the parking lot to see who returned to the car.

After approximately thirty minutes of waiting, Office Pecore saw a man approaching the parked car. Dkt. 58, ¶ 6; PSR ¶ 8; Ex. A.[1] The lights on the car flashed, as if the man were using a key fob to unlock the door. Dkt. 58, ¶ 6, Ex. A. Officer Pecore and others contacted the man at the driver's door just as he was opening it to get in. Dkt. 58, ¶ 6; PSR ¶ 8, Ex. A. The man identified himself as William Gale, the defendant. Dkt. 58, ¶ 6; PSR ¶ 8. He also acknowledged the gun in the backseat, saying it was his cousin's. Ex. A, B.[2] The officers ran the defendant's name and determined that he was a convicted felon, so they arrested the defendant for unlawful possession of a firearm. Dkt. 58, ¶ 6; PSR ¶ 8. In a search incident to arrest, the officers located a Glock handgun with an extended magazine on the defendant's hip. Dkt. 58, ¶ 7; PSR ¶ 9. The gun was loaded with 25 rounds, and there was another in the chamber. Dkt. 58, ¶ 7.

In addition to arresting the defendant, the officers also impounded his car pending a search warrant. Ex. A. As the tow was happening, an individual approached the car and tried to access the area where the handgun had been seen. Ex. C, D.[3]

---

[1] Exhibit A is a statement written by the arresting officer, Officer Jason Pecore. Certain personal identifying information has been redacted.

[2] Exhibit B is a 52-second clip from Officer Pecore's (much longer) body-worn video of the arrest. It shows the defendant claiming that the gun in the back seat belonged to his cousin.

[3] Exhibit C is a statement written by Officer Lyle Lavertue documenting this incident. Exhibit D is a clip, just over a minute long, from Officer Lavertue's body-worn video which reflects a portion of his involvement in this investigation, including his contact with the individual who approached and tried to enter the defendant's car as it was being prepared to be towed. In his factual basis for his plea, the defendant claims that this attempted entry into his car by another occurred at about the same time that he was stopped. Dkt. 58, ¶ 6. It did not. Rather, based on the full video from Officer Lavertue's body-worn camera, it occurred about 40 minutes after the defendant's arrest, and about 30 minutes after the defendant had been removed from the scene.

*United States v. Gale* / CR20-04 RAJ
Government's Sentencing Memorandum - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Police later obtained and executed a search warrant on the car. Ex. E.[4] Searching officers located the handgun that Officer Pecore had first seen in the rear of the car. Ex. E. It was another Glock handgun, also with an extended magazine; this firearm was stolen. PSR ¶ 8; Ex. E. This gun was loaded with 12 rounds, including one in the chamber. Ex. E. Also in the car were another loaded Glock magazine, a large knife, 26 VISA gift cards, and the rental agreement for the car, showing that the defendant was the renter. Ex. E.

ATF Special Agent Catherine Cole, a firearms examiner and nexus expert, examined both of the Glock pistols; she confirmed that they are both firearms as defined by federal law, and were both manufactured in Austria before being imported into the United States by Glock, Inc. in Georgia. Dkt. 58, ¶ 8.

The defendant has several felony convictions, including *Unlawful Possession of a Firearm*, *Assault in the Third Degree—Domestic Violence*, and *Felony Harassment—Domestic Violence*. Dkt. 58, ¶ 2. These three felonies were prosecuted under the same cause number. Dkt. 58, ¶ 2; PSR ¶ 28. The defendant entered a plea of guilty to these offenses after being advised that the crimes were punishable by more than one year in prison, and in each case, he was in fact sentenced to more than one year in prison. Dkt. 58, ¶¶ 3-4; PSR ¶ 28. He also signed a document acknowledging that he was no longer eligible to possess a firearm. Dkt. 58, ¶ 4.

After the defendant's arrest, SPD Officers Chesney and Pecore looked at the defendant's social media postings. Officer Pecore located a video that the defendant had posted on November 16, 2019—just the day before his arrest—depicting him admitting to being a Deuce-8 gang member. Ex. A. Officer Chesney found a photograph that the defendant had posted to Facebook on October 3, 2019, depicting a mask, Nike Air Force One shoes, and handgun. Ex. F, G.[5] Additionally, the firearm recovered from the defendant's person was test fired, and the resultant casing submitted to NIBIN; officers

---

[4] Exhibit E is the relevant portion of a statement written by Officer A. Harris, with sensitive information redacted.
[5] Exhibit F is a statement from Officer Chesney documenting his involvement in this investigation. Exhibit G is a screenshot of the photograph he located. Certain personal identifying information has been redacted from both items.

*United States v. Gale* / CR20-04 RAJ
Government's Sentencing Memorandum - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

were notified that that casing was linked ("presumptive investigative lead") via NIBIN to a drive-by shooting on September 23, 2019.

### III. PROCEDURAL HISTORY

The defendant was initially charged by Complaint with one count of *Felon in Possession of a Firearm*. Dkt. 1. He made his Initial Appearance on January 10, 2020, and detained. Dkt. 10, 13. On January 16, 2020, a grand jury sitting in the Western District of Washington returned a one-count Indictment against the defendant, charging him with *Felon in Possession of a Firearm*. Dkt. 12. On October 30, 2020, the defendant entered a plea of guilty as charged, without the benefit of a plea agreement. Dkt. 56.

### IV. SENTENCING GUIDELINES RANGE

The government agrees with the guidelines calculations set forth in U.S. Probation's Presentence Investigation Report. In particular, the government concurs that the total offense level is 20, based on a base offense level of 20 due to the nature of the firearm and the defendant's status as a prohibited person, a two-level increase because one of the firearms he possessed was stolen,[6] and a two-level reduction for acceptance of responsibility. PSR ¶¶ 13-23; Addendum. The government also agrees that the defendant has a criminal history score of 10, putting him in criminal history category V. PSR ¶¶ 24-33. This yields a sentencing guidelines range of 63 to 78 months. U.S.S.G. Ch. 5, Pt. A; PSR ¶ 73.

### V. SENTENCING RECOMMENDATION

As this Court is aware, it is to consider both the guidelines range and the factors set forth in Title 18, United States Code, section 3553, in fashioning a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with needed training, care, or treatment.

---

[6] The government acknowledges that the defendant disputes that this two-level upward adjustment should apply. The government's position is adequately set forth in the Addendum to the Presentence Investigation Report.

*United States v. Gale* / CR20-04 RAJ
Government's Sentencing Memorandum - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

This Court is also to consider the nature and circumstances of the offense, the history and characteristics of the offender, the kinds of sentences available, the policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims of the defendant's crimes. However, as the Ninth Circuit and the Supreme Court have made clear, the sentencing guidelines are "the 'starting point and the initial benchmark' . . . and are to be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 996 (9th Cir. 2008) (internal citations omitted).

Based on these factors, the government recommends that this Court impose a sentence of 66 months, in the middle of the applicable guidelines.

First, the nature and circumstances of the offense are serious. The defendant, who is not yet 30 years old, already has five felony convictions, including two for gun crimes. Despite knowing that he could not possess a firearm, the defendant had a Glock handgun in his waistband at 2:00 a.m. in an area of Seattle known for drug and gang activity, and that was also crowded with people leaving the nearby bars after last call. The gun had an extended magazine, was loaded, and had a bullet in the chamber. He had a second Glock firearm with a loaded extended magazine in the back seat, and yet another loaded Glock magazine in the glove box, along with the rental agreement in his name. The defendant's conduct presented a grave risk to public safety, not only because he was a felon carrying a gun, but based on the nature of the firearm, the amount of ammunition, the setting in which he carried it, and his involvement in an active and violent gang.[7]

Second, the history and characteristics of the defendant are aggravating. As referenced above, he has five felony convictions already, despite the fact that he is only 29.

---

[7] The government acknowledges that the defendant claims that he is no longer gang-affiliated. As discussed above, however, the day before his arrest on this offense, he posted a video to Facebook claiming Deuce-8. He told the U.S. Marshals upon booking that he was a Deuce 8 member. He has been shot three times, most recently in 2018, in gang-related incidents. Additionally, the gun he was carrying was linked through NIBIN to a drive-by shooting in Seattle that had occurred on September 23, 2020—about seven weeks earlier. While the government cannot establish that the defendant was present at the shooting—and there is some reason to believe that he was not—the link nonetheless suggests he is closely affiliated with individuals who are involved in shootings. Finally, as discussed in prior briefs addressing the defendant's repeated motions for release, two separate SPD informants, including one who was an active Deuce-8 member at least as recently as last year, have identified the defendant as a shooter in that gang. Dkt. 25

*United States v. Gale* / CR20-04 RAJ
Government's Sentencing Memorandum - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In the first of his two gun crimes, the defendant—then 19—had a loaded handgun concealed on his hip while at a bus stop; a short time earlier, he had been on the property of Franklin High School. In the second gun crime—for which he was also convicted of Assault in the Third Degree and Felony Harassment, both domestic violence offenses—the defendant pulled his girlfriend to the floor by her hair, kicked her, dragged her, then held her by the throat as he placed a gun to her head. He told her that, "If I'm going to jail, I'm going for killing you." The gun was later recovered; it was loaded. Thus, the defendant has accumulated enough criminal history to be in Criminal History Category V, and these offenses have largely included serious violence and firearms.

This troubling criminal history is further aggravated by the fact that he has done poorly on supervision, giving this Court no reason to believe that a shorter sentence coupled with supervised release can mitigate the risk that the defendant poses to the public. After his release for the domestic violence offenses and firearm offense described above, the defendant repeatedly violated the terms of his release by failing to engage in domestic violence treatment, absconding from supervision, using drugs, selling bunk, failing to participate in drug treatment, changing addresses without permission, and more. It appears he also committed the obstruction offense while still on supervision. And, of course, he committed this offense while on supervision as well.

Unlike many defendants who appear before this Court, there are no mitigating facts in the defendant's background that offset the aggravating nature of the crime and the defendant's history. He was raised in a stable home with a loving family free from either addiction or abuse. His parents provided guidance and support, and addressed his concerning behaviors with counseling and prosocial activities. Nonetheless, the defendant appears to have been determined to involve himself in gang activities, beginning at a very early age. Yet despite being shot—three times!—and having served time in prison for carrying guns, he has still not disassociated himself from the gang. Indeed, in a call from the jail shortly after his arrest, he repeatedly indicated that once he was out he was going to assault a particular (unknown) person, and also complained about a possible "snitch." *See*

*United States v. Gale* / CR20-04 RAJ
Government's Sentencing Memorandum - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Dkt. 29, Ex. A (jail call from the defendant on December 9, 2019). For instance, he told the woman that when he got out he would "come and knock that n***'s face off." *Id*., at 8:30-8:35. Accordingly, a substantial sentence is needed to protect the public from the defendant. There is certainly no basis in these facts to impose a sentence well below the guidelines range, as recommended by U.S. Probation and the defendant.

Third, a within-guidelines sentence does not create any unwarranted sentencing disparities. Rather, it appropriately reflects the seriousness of the defendant's offense, the seriousness of his previous criminal conduct, and the concerning nature of his continuing association with a violent gang. Similarly, a sentence of 66 months is not inconsistent with any policy statement of the Sentencing Commission, nor is there any restitution owing that would suggest that a shorter sentence is needed to permit the defendant to work towards making a victim whole.

Accordingly, in order to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and most significantly, protect the public from further crimes of the defendant, the government urges this Court to follow the government's recommendation and impose a sentence of 66 months. Such a sentence is lengthy, but it is also necessary to serve these purposes, most particularly protection of community safety. The government also recommends a three-year period of supervised release, and all of the conditions recommended by U.S. Probation.

//
//
//
//
//
//
//
//
//

*United States v. Gale* / CR20-04 RAJ
Government's Sentencing Memorandum - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VI.   CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence the defendant to 66 months of imprisonment, followed by three years of supervised release.

DATED this 29th day of January, 2021.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

*s/ Erin H. Becker*
ERIN H. BECKER
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: (206) 553-2905
Fax: (206) 553-0755
Email: Erin.Becker@usdoj.gov

*United States v. Gale* / CR20-04 RAJ
Government's Sentencing Memorandum - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

CERTIFICATE OF SERVICE

*United States v. Gale* / CR20-04 RAJ
Government's Sentencing Memorandum - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970